**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 03-CR-0180-CVE** |
| | ) | **(05-CV-0168-CVE)** |
| **WILLIAM PARKS REEVES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

On March 25, 2005, defendant William Parks Reeves ("Reeves"), a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 51).  Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Reeves challenges his sentence on the grounds that it exceeded the statutory maximum and that he received ineffective assistance of counsel. The government has filed a response (Dkt. # 54).  For the reasons discussed below, the Court finds defendant's section 2255 motion should be denied.

### I.

Reeves was charged with the following counts: (1) possession of methamphetamine with intent to distribute fifty (50) grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii); (2) establishment of operations for the manufacturing of methamphetamine, in violation of 21 U.S.C. §§ 856(a)(1) and (b); (3) unlawful distribution of less than five (5) grams of methamphetamine on or about December 17, 2002, in violation of 21 U.S.C §§ 841(a)(1) and 841 (b)(1)(c); (4) unlawful distribution of less than five (5) grams of

methamphetamine on or about December 19, 2002, in violation of 21 U.S.C §§ 841(a)(1) and 841 (b)(1)(c); and (5) unlawful manufacture of methamphetamine, in violation of 21 U.S.C §§ 841(a)(1) and 841 (b)(1)(C). Dkt. # 1. The Court appointed Frank Lockhart to represent defendant on January 22, 2004. Dkt. # 10. On April 7, 2004, Reeves waived his right to a jury trial, executed a "Petition to Enter a Plea of Guilty," and pled guilty without a plea agreement. Transcript of Plea, 4/7/2004. The Court accepted Reeves' plea and set sentencing for July 8, 2004. Id. at 18.

On April 16, 2004, defendant withdrew his guilty plea as to count three in order to reenter a plea of guilty with respect to count three with a plea agreement. Transcript of Change-of-Plea Hearing, 4/16/2004, at 3. Defendant waived his right to a jury trial as to that count and executed a new "Petition to Enter a Plea of Guilty." Dkt. # 37. The plea agreement stated, in pertinent part:

> The defendant agrees to waive all appellate rights, including any and all collateral attacks including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel.

Dkt. # 36, Plea Agreement, at 2. The plea agreement also stipulated that, with respect to the Sentencing Guidelines, U.S.S.G. § 1B1.3 (Relevant conduct) and § 3D1.2(d) (Groups of Closely Related Counts) would apply in determining the defendant's sentence. Id. at 11. In the April 16, 2004 hearing, defendant admitted to "intentionally" selling "a fourth of a gram" of methamphetamine. Dkt. # 59, Transcript of Change-of-Plea Hearing, 4/16/2004, at 19. He acknowledged that he "knew that [he] [was] selling a controlled substance." Id. The Court accepted Reeves' plea and set sentencing for July 8, 2004. Id. at 22.

On June 24, 2004, the Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004). On July 6, 2004, Lockhart filed an objection to the presentence investigation report. Dkt. # 38. Pursuant to the Blakely decision, Lockhart objected to the possible imposition of a

2

sentence above the maximum sentence that the Court may impose solely on the basis of the facts admitted by the defendant.  Id.  On July 8, 2004, the Court offered to vacate Reeves' guilty plea on the ground that he had executed a Waiver of Jury Trial form prior to the Blakely decision, resulting in a mistake of fact in the plea agreement.  Dkt. # 61, Transcript of Sentencing Hearing, 7/8/2004, at 7.  Reeves rejected the Court's offer and indicated his "wish . . . to still continue with sentencing" Id. at 11.

On July 16, 2004, the Court found the Waiver of Jury form Reeves had executed on April 16, 2004 to be valid, and determined that its terms, consistent with Blakely, allowed the Court to consider relevant conduct in sentencing Reeves.  Dkt. # 60, Transcript of Sentencing Hearing, 7/16/2004, at 3.  The Court determined that it "would have to find any facts that would increase the defendant's sentence beyond a reasonable doubt."[1]  Id. at 3. At that time, the Court conducted an evidentiary hearing to determine the scope of the relevant conduct that could be considered.  Id. at 5.  Sentencing was then reset for July 19, 2004. Id. at 41.

On July 19, 2004, the Court entered an order finding that defendant was involved in ongoing conduct regarding the sale of methamphetamine.  Specifically, the Court found, beyond a reasonable doubt, that defendant knowingly possessed 273.3 grams of liquid methamphetamine and concluded that such possession was relevant conduct for sentencing purposes.  Dkt. # 48.

On July 19, 2004, at the sentencing hearing, the Court found that defendant's criminal history category was III and the total offense level was twenty-five (25), "which makes the recommended guidelines 70 to 87 months."  Dkt. # 58, Transcript of Sentencing Hearing, 7/19/2004 at 8; Dkt. #

---

[1]      The government objected to the "beyond a reasonable doubt" standard of proof, and its objection was noted for the record.  Transcript of Sentencing Hearing, 7/16/2004, at 4.

48, at 3.  Reeves was sentenced to 87 months imprisonment and three additional years of supervised release.  Dkt. # 58, at 14.  In providing its reason for this sentence, the Court explained: "The Court has found beyond a reasonable doubt that defendant was involved in ongoing conduct regarding the sale of methamphetamine and the Court finds beyond a reasonable doubt that his involvement was greater than just the one act to which he entered a guilty plea, therefore, a sentence at the high end of the Guideline range is appropriate."  Id. at 15.  The Court advised Reeves of his right to appeal, "subject to any waiver of [his] right to appeal that is contained in [the] plea agreement."  Id. at 16.  Reeves did not file a direct appeal of his conviction and sentence, so his sentence was final on August 2, 2004.  See Fed. R. App. P. 4(b)(1).

## II.

As the first ground for his section 2255 motion, defendant argues that his "sentence exceeded the 'statutory maximum' allowable for his offense conduct."  Dkt. # 51, at 5.  However, this assertion is, quite clearly, erroneous.  The statutory maximum for count three (the knowing and intentional distribution of less than five grams of methamphetamine), to which defendant pled guilty, is twenty years imprisonment.  The Court made this statutory maximum clear to the defendant, and the defendant indicated that he understood the statutory maximum to be twenty years imprisonment:

> COURT: Do you understand that the maximum sentenced which may be imposed by the Court may include a term of imprisonment not to exceed 20 years?
> DEFENDANT: Yes, ma'am.

Dkt. # 60, at 11.  Defendant was sentenced to 87 months imprisonment; thus, his sentence was not greater than the statutory maximum.

In his section 2255 motion, defendant objects to the fact that the Court considered "relevant conduct" in determining the guideline sentence range.  Defendant states: "The additional 274.2

4

grams of meth found by the judge under the preponderance of the evidence standard used to enhance Reeves' guideline sentence range from 8 to 14 months to 87 to 108 months violated Reeves Sixth Amendment Right to trial by jury and resulted in a sentence that exceeds the 'statutory maximum' allowable under Booker." Dkt. # 51, at 27.  Putting aside a moment defendant's reference to United States v. Booker, 543 U.S. 220 (2005), which is addressed below, the Court first notes that the defendant waived his right to a jury trial.  The Court explained defendant's waiver, and defendant evidenced his understanding of that fact.

> COURT: Mr. Reeves, do you understand you have a right to plead not guilty to the offense charged against you and the right to persist in that plea; that you would then have a right to trial by jury; and you and you alone can give up that right. . . . . Do you understand you still have all those rights?
> DEFENDANT: Yes, ma'am.
> COURT: Do you understand that by entering a plea of guilty to Count 3, if that plea is accepted by the Court, there will be no trial and you will have waived or given up your right to a trial as well as all those other rights associated with the trial that I just described?
> DEFENDANT: Yes.
> COURT: Understanding that, is it your desire to waive a jury trial?
> DEFENDANT: Yes.

Dkt. # 59, at 16-17.   After the Blakely decision and before sentencing, defendant filed a motion arguing that the Court could impose a maximum sentence based solely on the facts reflected in the jury verdict or admitted by the defendant.  Dkt. # 38, at 5.  Clearly, the defendant, in his section 2255 motion, reiterates this argument.  However, in the July 8, 2004 hearing, the Court explained to defendant and defendant's counsel, "There's one Sixth Amendment right to trial by jury.  It was waived.  There's not a separate right to trial by jury for guilt or innocence and a separate right for trial by jury as to sentencing."  Dkt. # 61, at 2.  Given defendant's confusion over Blakely and the possibility that defendant's waiver was not knowing, the Court gave defendant a chance to withdraw the plea agreement based on a mistake of fact.  Id. at 7.  However, defendant rejected the Court's

5

offer and opted to retain the existing plea agreement in its existing form.  Id.  Thus, defendant was

not denied his right to jury trial; he expressly and knowingly waived that right, and he later ratified

the waiver.

      In response to defendant's argument, the Court also notes that it did not use a

"preponderance of the evidence standard" but used a "beyond a reasonable doubt" standard in

determining the relevant conduct for sentencing purposes.  See Dkt. # 60, at 3.  Indeed, as the Court

explained in the July 8, 2004 hearing, "I read Blakely to say that the judge is finding the facts

instead of the jury based upon the waiver.  But facts have to be found beyond a reasonable doubt."

Dkt. # 61, at 11-12.  Additionally, the Court notes that it determined the applicable guideline range

to be between 70 and 87 months, not between 87 and 108 months.  In sum, because defendant

waived his right to a jury trial, the Court used the "beyond a reasonable doubt" standard in

determining the relevant conduct to be taken into account at sentencing; thus, the Court rejects

defendant's contention that his sentence was in violation of the Sixth Amendment.

      To the extent defendant argues that the Court's sentences violates Booker,[2] the Court notes

that Booker does not apply retroactively to sentences that were final before that decision was

rendered.  Here, the Court entered its judgment on July 19, 2004, and defendant did not pursue a

direct appeal.  Thus, his conviction became final following the ten day period to appeal his case, or

on August 2, 2004.  See Fed. R. App. P. 4(b)(1)(A).  Therefore, for purposes of retroactivity

analysis, defendant's case was "final" over five months before the Supreme Court decided Booker

on January 12, 2005.  The Supreme Court expressly applied its holding in Booker only to cases on

---

[2]      It is unclear whether defendant argues that Booker renders his sentence unconstitutional.
However, defendant references Booker several times in his § 2255 motion, Dkt. # 51, at 19-
24; thus, the Court will address briefly the impact of Booker on defendant's sentence.

direct review.  Booker, 543 U.S.. at 267.  That Court did not expressly declare, nor has it since

declared, that Booker should be applied retroactively to cases on collateral review.  In addition, the

Tenth Circuit has refused to apply Booker retroactively to cases on collateral review.  United States

v. Moore, 401 F.3d 1220, 1221 (10th Cir. 2005); United States v. Bellamy, 411 F.3d 1182, 1188

(10th Cir. 2005) ("Booker does not apply retroactively to initial habeas petitions); cf. Bey v. United

States, 399 F.3d 1266, 1269 (10th Cir. 2005) (holding Booker does not apply to second or successive

habeas petitions); United States v. Price, 400 F.3d 844, 849 (10th Cir. 2005) (holding Blakely v.

Washington, 542 U.S. 296 (2004), is not subject to retroactive application on collateral review).

Thus, Booker does not change the Court's determination that defendant's sentence was proper.

### III.

In his section 2255 motion, defendant further alleges ineffective assistance of counsel for

failure to file an appeal of his sentence "upon Movant's request." Dkt. # 51, at 19.[3]

To establish ineffective assistance of counsel, a defendant must show that his counsel's

performance was deficient and that the deficient performance was prejudicial.  Strickland v.

Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level

expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.

There is a "strong presumption that counsel's conduct falls within the range of reasonable

professional assistance."  Id. at 688.  In making this determination, a court must "judge . . . [a]

---

[3]     The Court finds that an evidentiary hearing is not necessary as the issues can be resolved on
the basis of the record.  See Townsend v. Sain, 372 U.S. 293, 318 (1963), overruled in part
by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992); United States v. Marr, 856 F.2d 1471, 1472
(10th Cir. 1988). Therefore, no evidentiary hearing will be held.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690.  Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.  See also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).   Although this Court is required liberally to construe a pro se petitioner's application for relief under section 2255, conclusory allegations, without factual basis, are insufficient to support claims of ineffective assistance of counsel.  United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994).

In his ineffective assistance of counsel argument, defendant asserts that he requested that his attorney, Lockhart, file an appeal.  However, this is in direct conflict with Lockhart's statement.  According to Lockhart's affidavit, "Mr. Reeves was sentenced on July 19, 2004.  Your affiant has not heard from Mr. Reeves since that time.  Your affiant has had several conversations with Mr. Reeves' family since sentencing, but there has been no mention of any appeal."  Dkt. # 54, Ex. 1, ¶ 11.  Defendant's mere assertion that he requested an appeal does not suffice to show that he received ineffective assistance of counsel.

The next and most important issue is whether defendant could appeal his sentence given the fact that he signed an appellate waiver.  To determine whether defendant could have appealed his sentence notwithstanding the appellate waiver in the plea agreement, the Court must examine: "(1)

whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004); see also United States v. Taylor, 413 F.3d 1146, 1151 (10th Cir. 2005).  In construing the appellate waiver provision, the Court applies "well-established contract principles" and examines the plain language of the plea agreement.  United States v. Porter, 405 F.3d 1136, 1142 (10th Cir. 2005).  The Court strictly construes the scope of the appellate waiver and interprets any ambiguities in favor or a defendant's appellate rights.  Id.

Examining the scope of the waiver under the first Hahn step, defendant "agree[d] to waive all appellate rights, including any and all collateral attacks including but not limited to those pursued by means of a writ of habeas corpus, save and except claims of ineffective assistance of counsel." Dkt. # 36, at 2 (emphasis added).  The clear language of the waiver indicates that defendant waived his right to appeal the sentence, since the waiver retained *only* the right to pursue ineffective assistance of counsel claims.

Next, the Court examines whether defendant's appellate waiver is voluntary and knowing. "When determining whether a waiver of appellate rights is knowing and voluntary, we especially look to . . . whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily . . . [and] for an adequate Federal Rule of Criminal Procedure 11 colloquy." Hahn, 359 F.3d at 1325.  Defendant signed and dated the page of the plea agreement which expressly provides:

> I have had this agreement read to me and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines which may apply to my case.  No other promises or

inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Dkt. # 36, at 14.  Defendant initialed each page of the plea agreement and signed it on April 16, 2004.

At the plea hearing, defendant acknowledged that the plea agreement had been read to him and that he understood the terms of the plea agreement.  Defendant denied that "anyone made any other or different promise or assurance of any kind to [him] in an effort to induce [him] to plead guilty."  Dkt. # 59, at 10.  The following exchange between the Court and defendant is further evidence of a knowing and voluntary waiver:

COURT: Has anyone attempted in any way to force you to plead guilty?
DEFENDANT: No, ma'am.
COURT: Are you pleading guilty of your own free will because you are guilty?
DEFENDANT: Yes, ma'am.
COURT: Do you understand the charge in Count 3?
DEFENDANT: Yes.
COURT: If you enter a plea of guilty, do you understand that the Court may sentence you to a term of imprisonment or a fine or both imprisonment and fine?
DEFENDANT: Yes, ma'am.
COURT: Do you understand that the maximum sentence which may be imposed by the Court may include a term of imprisonment not to exceed 20 years?
DEFENDANT: Yes, ma'am.

Id. at 11.  The defendant also indicated that he knowingly waived his appellate rights, except his right to appeal based on ineffective assistance of counsel:

COURT: In the plea agreement you are agreeing to waive all appellate rights, including any and all collateral attacks including those by means of writ of habeas corpus except for claims of ineffective assistance of counsel.  Do you understand that?
DEFENDANT: Yes, ma'am.

Id. at 15.

10

The Court asked defendant:   "Mr. Reeves, understanding the nature of the charges, your right to a jury trial, which you have voluntarily waived, and understanding the effect and consequences of a plea of guilty, how do you plead to Count 3?" <u>Id.</u> at 20.   Defendant responded, "Guilty." <u>Id.</u>  Before accepting his plea, the Court asked:

> COURT: Is your plea of guilty to Count 3 and the waiver of your rights made voluntarily and completely or your own free choice, free of any force, threats, or pressures from anyone?
> DEFENDANT: No, ma'am.
> COURT: Is it freely made?
> DEFENDANT:  Yes. Yes, ma'am, I'm sorry.
> COURT: Were you saying no, there was no force, pressures or threats from anyone?
> DEFENDANT: Yes.
> COURT: All right.  Are you relying on any representations or promises – express or implied – which are not clearly and specifically stated in the written plea agreement dated April 16, 2004 consisting of 14 pages.  Do you know of any other promises?
> DEFENDANT: No, ma'am.
> COURT: All right.  It is the finding of the Court in the case of the United States versus Willaim Parks Reeves, based upon the defendant's admissions, demeanor, and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.  The plea is therefore accepted, and the defendant is now adjudged guilty of that offense.

<u>Id.</u> at 20-21.   In sum, the plea agreement's waiver of appellate rights and defendant's responses to the Court's questions at the plea hearing make clear that defendant's waiver of his appellate rights was knowing and voluntary.

Further, defendant's appellate waiver is not rendered unknowing and involuntary by the Supreme Court's subsequent decision in <u>Booker</u>.  <u>United States v. Green</u>, 405 F.3d 1180, 1190 (10th Cir. 2005) ("a defendant's decision to give up some of his rights in connection with making a plea -- including the right to appeal from the judgment entered following that plea -- remains voluntary and intelligent or knowing despite subsequent developments in the law").  As part of his plea agreement,

defendant signaled his intent generally to waive his constitutional rights, including the right to appeal his sentence.  Id.; see also Brady v. United States, 397 U.S. 742, 757 (1970) ("a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.").

Finally under Hahn, whether enforcement of defendant's appellate waiver qualifies as a miscarriage of justice depends on whether: 1) "the district court relied on an impermissible factor such as race;" 2) "ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid;" 3) "the sentence exceeds the statutory maximum;" or 4) "the waiver is otherwise unlawful." Id. at 1327 (citing United States v. Elliott, 264 F.3d 1171, 1173 (10th Cir. 2001)).  The first factor is not at issue in this case.  The second factor of ineffective assistance of counsel has not been raised in connection with the negotiation of the waiver.  As noted above, defendant's sentence of 87 months does not exceed the statutory maximum for the crime to which he pled guilty.  See United States v. Maldonado, 410 F.3d 1231, 1233 (10th Cir. 2005) (holding the "statutory maximum" refers to the statute of conviction for purposes of a Hahn miscarriage of justice analysis).

To satisfy the test of an "otherwise unlawful" appellate waiver, "'the error [must] seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings.'" Hahn, 359 F.3d at 1327 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).  Under United States v. Porter, 405 F.3d 1136 (10th Cir. 2005), the subsequent issuance of Booker does not render defendant's plea agreement unlawful. Id. at 1145.  The Court concludes that defendant has failed to demonstrate either that there was any error in his sentencing or that any alleged error in his sentencing seriously affected the fairness, integrity or public reputation of judicial proceedings.  See Maldonado, 410

12

F.3d at 1233 ("the defendant bears the burden of persuasion on this point"). Consequently, his appellate waiver is not "otherwise unlawful" and its enforcement would not result in a miscarriage of justice. Therefore, the plea agreement constitutes an enforceable waiver of appellate rights.

Given that the plea agreement included the waiver of the right to appeal defendant's sentence, the defendant knowingly and voluntarily waived his appellate rights, and enforcing the waiver would not result in a miscarriage of justice, the Court determines that Lockhart did not render ineffective assistance to defendant by failing to pursue an appeal. Indeed, given the waiver, any attempt to appeal the sentence would have been futile. Thus, the Court rejects defendant's ineffective assistance of counsel argument in his section 2255 motion.

**IV.**

Defendant has failed to demonstrate entitlement to relief on any of the claims asserted in his section 2255 motion. **IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 51) is **denied**.

**IT IS SO ORDERED** this 5th day of October, 2006.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT